DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Appellant, Angel Vargas, appeals his conviction out of the Lorain County Court of Common Pleas. This Court reverses.
 I. {¶ 2} On May 31, 2006, Vargas was indicted on one count of aggravated robbery in violation of R.C. 2911.01(A)(2), a felony of the first degree; one count of theft in violation of R.C. 2913.02(A)(1), a misdemeanor of the first degree; and one count of robbery in violation of R.C. 2911.02(A)(2), a felony of the second degree. Prior to trial, the State moved to dismiss the robbery charge and the matter proceeded to trial before the jury on the first two counts. At the conclusion *Page 2 
of the State's case-in-chief, Vargas moved for a judgment of acquittal pursuant to Crim.R. 29. The trial court denied the motion. Vargas rested and renewed his Crim.R. 29 motion. The trial court denied the motion. The jury found Vargas guilty of aggravated robbery and theft. Prior to sentencing, Vargas renewed his Crim.R. 29 motion, which the trial court denied. The trial court sentenced Vargas to three years in prison on the aggravated robbery and merged the theft into the aggravated robbery for purposes of sentencing. Vargas timely appeals, setting forth two assignments of error. This Court rearranges and consolidates the assignments of error for purposes of review.
 II. ASSIGNMENT OF ERROR II "THE TRIAL COURT ERRED AS A MATTER OF LAW AND TO THE PREJUDICE OF APPELLANT BY DENYING HIS MOTIONS FOR JUDGMENT OF AQUITTAL [sic] PURSUANT TO OHIO CRIM.R. 29 IN VIOLATION OF APPELLANT'S RIGHT TO DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION AND ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION, AS THE EVIDENCE FOR THE CHARGE OF ARMED ROBBERY WAS INSUFFICIENT TO PRESENT TO THE TRIER OF FACT."
 ASSIGNMENT OF ERROR I "THE VERDICT OF THE JURY FINDING APPELLANT GUILTY OF AGGRAVATED ROBBERY IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, IN VIOLATION OF APPELLANT'S RIGHT TO DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION AND ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION." *Page 3 
 {¶ 3} Vargas argues that his conviction for aggravated robbery was not supported by sufficient evidence and was against the manifest weight of the evidence. Vargas argues that the State failed to prove all elements of the offense beyond a reasonable doubt. Specifically, Vargas argues that the State failed to prove that he possessed a firearm during the commission of a theft offense and that the alleged firearm was operable. This Court disagrees, in part, and agrees, in part.
 {¶ 4} Crim.R. 29 provides, in relevant part:
 (A) The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. The court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case."
 {¶ 5} A review of the sufficiency of the State's evidence and the manifest weight of the evidence adduced at trial are separate and legally distinct determinations. State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600. "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." Id., citing State v. Thompkins (1997),78 Ohio St.3d 380, 390 (Cook J., concurring). When reviewing the sufficiency of the evidence, this Court must review the evidence in a light most favorable to the prosecution to *Page 4 
determine whether the evidence before the trial court was sufficient to sustain a conviction. State v. Jenks (1991), 61 Ohio St.3d 259, 279.
 "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id. at paragraph two of the syllabus.
 {¶ 6} A determination of whether a conviction is against the manifest weight of the evidence, however, does not permit this Court to view the evidence in the light most favorable to the State to determine whether the State has met its burden of persuasion. State v. Love, 9th Dist. No. 21654, 2004-Ohio-1422, at ¶ 11. Rather,
 "an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339, 340.
 {¶ 7} This Court has stated that "[s]ufficiency is required to take a case to the jury[.] * * * Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." (Emphasis omitted.) State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462. *Page 5 
 {¶ 8} Vargas was convicted of aggravated robbery in violation of R.C.2911.01(A)(2), which provides:
 "No person, in attempting or committing a theft offense, * * * or in fleeing immediately after the attempt or offense, shall * * * [h]ave a dangerous ordnance on or about the offender's person or under the offender's control[.]"
 {¶ 9} R.C. 2923.11(K) defines "dangerous ordnance" to include a firearm. R.C. 2923.11(B) defines "firearm" as follows:
 "(1) [A]ny deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant. `Firearm' includes an unloaded firearm, and any firearm that is inoperable but that can be rendered operable.
 "(2) When determining whether a firearm is capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant, the trier of fact may rely upon circumstantial evidence, including, but not limited to, the representations and actions of the individual exercising control over the firearm."
 {¶ 10} Natasha McCaskill testified at trial that she was working as a clerk at the Shoe Carnival in Elyria on April 6, 2006, when Vargas entered the store. She testified that she knew of him, because he was a friend of her former boyfriend and because he had been in the store a couple times while she was working. She testified, however, that she had not otherwise seen Vargas since 1996 or 1997.
 {¶ 11} Ms. McCaskill testified that Vargas entered the store around 9:45 a.m., greeted her, then asked whether the store had ever been robbed. She testified that she told him, "No," and that there were cameras hidden throughout the store. *Page 6 
She testified that there are only cameras aimed at the cash registers, front door, storeroom and office, but that there are no cameras aimed into the aisles.
 {¶ 12} Ms. McCaskill testified that Vargas then went into the aisles to look at boots. Ms. McCaskill testified that Vargas asked for the partner boots for some fashion footwear, but she told him that she did not have the key to the storeroom. She testified that Vargas then turned to the side, at which time she saw the handle of a gun protruding from the waistband on his right side. She described the handle as black, long, square and flat. Although Ms. McCaskill could not identify the specific type of gun she saw or whether it was real or fake, she testified that she was sure it was a gun. She testified that she felt somewhat threatened because she saw that Vargas was carrying a gun. She admitted that Vargas did not verbally threaten her.
 {¶ 13} Ms. McCaskill testified that she left Vargas and went to tell her manager that her customer had a gun. She testified that the manager was with her own customer and that neither of them called the police, because store policy requires, first, that they notify the general manager, and, second, that they notify loss prevention. She testified that employees are not allowed to pursue potential shoplifters.
 {¶ 14} The State and Vargas presented a videotape from the store cameras as a joint exhibit. In the videotape, Vargas can be seen walking within the store and talking to Ms. McCaskill at the cash register kiosk. Vargas was wearing a *Page 7 
long, hooded sweatshirt which fell well below his waist. The tape also shows what is purported to be the lower portion of Vargas as he had just exited the store.
 {¶ 15} Ms. McCaskill testified that Vargas took two pairs of shoes and ran out of the store without paying for them. She testified that the store alarm then sounded. Ms. McCaskill testified that she and her manager contacted the store's general manager, the company loss prevention representative and then the police, pursuant to store policy.
 {¶ 16} On cross-examination, Ms. McCaskill testified that she neither allowed nor assisted Vargas in stealing anything. In response to defense counsel's question why she continued to look at the security camera, she replied that she always looks at the cameras.
 {¶ 17} Officer Richard Ilcisko of the Elyria Police Department testified that he arrived at work on April 6, 2006, at 1:30 p.m. for role call briefing. He testified that he recognized Vargas in a photograph of a robbery suspect which was being passed around during the briefing.
 {¶ 18} Officer Ilcisko testified that Detective Barbee of the Elyria Police Department approached him the next day, told him that Vargas had been identified in a photo array, that a warrant had been issued for his arrest, and that Ilcisko should arrest Vargas if he saw him.
 {¶ 19} Officer Ilcisko testified that he knew Vargas lived in a Lorain Metropolitan Housing Authority highrise apartment building on East Avenue, so *Page 8 
he went there. The officer testified that he entered the apartment building and immediately saw Vargas sitting in the lobby. Officer Ilcisko testified that he ordered Vargas to his feet, told him to turn around and place his hands in the air, and that there was a warrant for his arrest. He testified that he began escorting Vargas to the police cruiser, when Vargas blurted out that he knew why the police were there for him. Officer Ilcisko testified that he informed Vargas that he did not have to speak to the police without an attorney, but that Vargas continued to "talk over" him. He testified that Vargas stated that he knew they were there for him "about the stealing" but that he "didn't have a gun." At that time, Officer Ilcisko testified that he had not mentioned either the charges or a gun.
 {¶ 20} Detective Larry Barbee of the Elyria Police Department testified that he was assigned to investigate this case. He testified that he compiled a photo array and that both Ms. McCaskill and her manager identified Vargas as the person who stole shoes on April 6, 2006. Detective Barbee testified that he interviewed Vargas after advising him of his Miranda rights. The detective testified that Vargas admitted taking the shoes but denied having a weapon.
 {¶ 21} Viewing the evidence in a light most favorable to the prosecution, this Court finds that any rational trier of fact could have found the essential elements of the crime of aggravated robbery proven beyond a reasonable doubt. See Jenks, 61 Ohio St.3d at 279. Vargas does not dispute that he stole shoes from the store. Ms. McCaskill testified that she saw a gun in Vargas' waistband, a place *Page 9 
which would make the gun immediately accessible for use. Accordingly, the State presented sufficient evidence to meet its burden of production at trial. See Gulley, supra.
 {¶ 22} However, in weighing the evidence and all reasonable inferences and considering the credibility of the witnesses, this Court finds that this presents the exceptional case, where the evidence weighs heavily in favor of Vargas.
 {¶ 23} The weight of the evidence does not support the conclusion that Vargas had a firearm on or about his person or under his control while committing a theft offense or fleeing immediately thereafter. Ms. McCaskill testified that Vargas entered the store and immediately asked whether the store had ever been robbed. However, Vargas's attorney did not dispute that Vargas stole two pairs of shoes, only whether Vargas had a gun.
 {¶ 24} The evidence established that Vargas was wearing a long sweatshirt that covered him well below his waistband. Although Ms. McCaskill testified that she clearly saw the handle of a gun protruding from Vargas' waistband when he turned in the store aisle as she was attending him, this Court finds her testimony incredulous. She did not testify that Vargas lifted his shirt or even bent over so that the gun might be exposed. Based on this testimony, the jury could infer that Ms. McCaskill could only have seen the gun if Vargas intentionally exposed it. However, she did not testify that he did anything which would have reasonably *Page 10 
exposed the gun to her. Based on the evidence, it would be impossible to see a gun in the manner in which this witness described it as happening.
 {¶ 25} A thorough review of the record, including the videotape, compels this Court to find a clear indication that the jury lost its way and committed a manifest miscarriage of justice in convicting Vargas of aggravated robbery. This Court finds that Vargas' conviction is against the manifest weight of the evidence.
 {¶ 26} Vargas' second assignment of error is overruled, but his first assignment of error is sustained.
 III. {¶ 27} Vargas' second assignment of error is overruled. His first assignment of error is sustained. Vargas' conviction out of the Lorain County Court of Common Pleas is reversed and the cause remanded for further proceedings consistent with this decision.
Judgment reversed, and cause remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27. *Page 11 
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to appellee.
 MOORE, J., DICKINSON, J., CONCUR. *Page 1